UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Shawn George M. Baker, Civil No. 01-1248 JRT/FLN

Plaintiff,

vs. **REPORT AND RECOMMENDATION**

Star Tribune Company, et. al.,

Defendants.

---

Lawrence H. Crosby, Crosby & Associates, for Plaintiff.
Jacqueline R. Rolfs and Adam Kirsch, Faegre & Benson, for Defendant Star Tribune.

---

**THIS MATTER** came for a hearing before the undersigned United States Magistrate Judge on December 14, 2001, on the Defendant's Motions to Dismiss or for Summary Judgment [#12 & #20] pursuant to Fed. R. Civ. P. 12(b)(6) or 56. This matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636. For the reasons which follow, this Court will recommend that Defendant Star Tribune's motions be granted.

## I. FACTUAL BACKGROUND

The facts giving rise to this action are as follows:

Plaintiff Shawn Baker ("Baker") was a employed as a commercial motor vehicle driver by the Star Tribune Company ("Strib") until his termination in the fall of 1999. (See Compl. at 2.) As such, Baker was subjected to random drug and alcohol testing pursuant to U.S. Department of Transportation ("DOT") and Federal Highway Administration ("FHWA") regulations. (See McKenzie Aff. ¶ 2 & Ex. at § 1, July 17, 2001.) Pursuant to these regulations Strib enacted policies which effectuate the federal regulations. (See McKenzie Aff. Ex.1, July 17, 2001.) Furthermore,

MAR 04 2002
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

the Collective Bargaining Agreement ("CBA") between Strib and the union representing Baker, the International Brotherhood of Teamsters Local No. 638 ("Local 638"), includes a discharge clause giving Strib the right to terminate any employee who tests positive for drugs. (See Id. Ex. 2 at ¶ 14 and Ex. 1 at § IV.A.)

In August 1995, Baker was terminated by Strib pursuant to its Drug Testing Policy and Collective Bargaining Agreement due to, and which was at the time, Baker's second positive drug test. (See McKenzie Aff., Ex. 1, 2, ¶ 14 & 3, July 17, 2001.) Subsequently, Strib agreed to reinstate Baker in November 1995, pursuant to a Last Chance Agreement with Baker. (Id. at Ex. 3.) The Last Chance Agreement contained the following clause: "[a]ny future positive drug test will result in your immediate termination." (Id.) Baker acknowledges that he agreed to the Last Chance Agreement. (See Compl. at 3, ¶ 14.)

On September 21, 1999, Baker was randomly selected to undergo testing for illegal drugs and their by-products by Strib. (See Compl. at 2.) At the time, Strib engaged National Medical Review Offices, Inc. ("NMRO") to conduct the collection process and test the collected sample. (See Am. Compl. at 2; Buffington Aff. at 2, July 17, 2001.) According to Baker, several irregularities arose during the testing process. First, the cup used for the urine sample was not packaged in a protective, sealed wrapper at the time the cup was presented to Baker. (See Compl. at 2.) Second, the NMRO employee who was present and oversaw the urine sample process held his finger in the open, unsealed cup when handing the cup to Baker. (Id. at 3.) Additionally, Baker's usual testing number was not the number used to identify the specimen. (Id.)

On September 24, 1999, Baker was informed that his sample had tested positive for marijuana. (Id.) Baker was subsequently terminated on October 1, 1999. (See Compl. at 4; Kirsch

Aff. at 1, July 17, 2001.) Baker denied then and continues to deny any use of marijuana which would have resulted in a positive test result. (See Compl. at 3.) Though offered the opportunity, Baker did not request to have his split sample tested after his primary sample tested positive.[1] (Id.) Baker had a second, independent test performed on October 1, 1999, and that test came back negative for illegal drugs. (Id. at 4.)

On November 3, 1999, Baker grieved the termination through Local 638. (See Kirsch Aff. Ex. A, July 17, 1999.) In a certified letter dated July 7, 2000, Baker was informed by the Union that its Executive Board had declined to pursue the grievance to arbitration. (See Kirsch Aff. Ex. B, July 17, 1999.)

Baker filed the instant suit on June 15, 2001, alleging negligence and breach of contract wherein Baker occupied position as a third party beneficiary. (See Compl. June 15, 2001.) Strib moved for dismissal under Fed. R. Civ. P. 12(b)(6) or, in the alternative, summary judgment. Baker then filed an Amended Compliant, as allowed by Fed. R. Civ. P. 15(a), adding Constitutional claims under the Fourth and Fifth Amendments. (See Am. Compl., August 28, 2001.) Strib again moved for dismissal or, in the alternative, summary judgment.

## II. STANDARD OF REVIEW

In the case of a defendant's 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, the court is limited to considering the allegations of the complaint, must take those allegations as true and must view the complaint in the light most favorable to the plaintiff. See

[1] When a urine specimen is collected, it is divided into a "primary" and "split" sample. In the event of a positive result on the primary sample, employees have the right to request a test of the split sample. See 49 C.F.R. §40.153 (2001).

Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). Rule 12(b)(6) motions are to be granted only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Ring v. First Interstate Mfg., Inc., 984 F.2d 924 (8th Cir. 1993); Klett v. Pim, 965 F.2d 587, 589 (8th Cir. 1992); United States v. Aceto Agric. Chem. Corp., 872 F.2d 1373, 1376 (8th Cir. 1989); Toombs v. Bell, 798 F.2d 297, 298 (8th Cir. 1986).[2]

## III. CONCLUSIONS OF LAW

### A. Defendant's Motion to Dismiss Counts I, II & III (Negligence and Breach of Contract Claims)

Strib contends that Baker's claims should be dismissed because Baker's termination was pursuant to a CBA, and therefore, all of Baker's claims against Strib relating to his termination are barred by Section 301's six (6) month statute of limitations under the Labor-Management Relations Act ("LMRA") 29 U.S.C. § 185. (See Def.'s Mem. at 9.) Specifically, Baker was informed of Local 638's decision not to pursue his grievance to arbitration in July, 2000, and brought his suit in June of 2001, nearly a full year later. (Def.'s Mem. at 10.) Baker does not address nor refute this argument.

It is, of course, well established "that an individual employee may bring suit against his employer for breach of a collective bargaining agreement." DelCostello v. International Bhd. of Teamsters, 462 U.S. 151, 163 (1983). First, however, the employee is required to exhaust all grievance or arbitration remedies provided for in the CBA. Id. Once those remedies have been

[2] The court declines to convert Defendant's motion to dismiss into a motion for summary judgment.

pursued to a unsatisfactory end, the employee may bring suit in court against the employer. If such a claim, however, is inextricably intertwined with consideration of a CBA, it is preempted by the LMRA, See Gore v. TWA, 210 F.3d 944 (8th Cir. 2000) and subject to the six month statute of limitations found in Section 301 of the LMRA. See DelCostello at 169-70, 172; see also Cook v. Columbian Chemicals Co., 997 F.2d 1239, 1241 (8th Cir. 1993) (holding that a Section 301 cause of action "accrues when 'the grievance procedure [is] exhausted or otherwise [breaks] down to the employee's disadvantage'").

The Supreme Court has held that "[o]nce an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered . . . a federal claim." Caterpillar Inc., v. Williams, 482 U.S. 386, 393 (1987). The "preemption analysis focuses on a determination of whether the state-law claim confers nonnegotiable state-law rights on employers or employees independent of any right established by contract, or, instead, whether evaluation of the tort claim is inextricably intertwined with consideration of the terms of the labor contract." Gore at 949. In Gore, a unionized airline mechanic filed several state law claims, including false arrest, against his employer. Id. at 948. The employer had investigated the employee's threatening conduct pursuant to terms of the Railway Labor Act and CBA. Id. at 947-48. The Court found that while state law created the tort cause of action "the collective bargaining agreement [was] the defining source of the duties specifically owed by the defendants for each claim asserted" and the plaintiff's burden to prove the tort of false arrest " necessarily require[d] an interpretation of the collective bargaining agreement to determine whether the defendants acted contrary to their duties under the agreement." Id. at 949-950. The court concluded that the "claim [was] not based on an independent state-law right but [was] inextricably intertwined with the provisions of the collective bargaining

agreement. Therefore, the claim [was] preempted" by the court. Id.

In the instant case, Baker has asserted claims of negligence and breach of contract. (See Compl.) These claims arise from Baker's discharge due to a positive drug test administered pursuant to company policy, DOT and FHWA regulations. (See Compl.; McKenzie Aff. ¶ 2 & Ex. 1, July 17, 2001.) Baker was subsequently terminated under the terms of the CBA which allows for discharge in the case of a positive drug test. (McKenzie Aff. Ex. 2, July 17, 2001.) The Discharge Clause reads as follows:

> [e]xcept in cases of discharge for dishonesty, drunkenness on the job or the use of narcotics, the Employer shall not discharge any employee without just cause and without giving at least one (1) warning notice of the complaint against such employee. Any employee may request an investigation as to his discharge and should such investigation prove that an injustice has been done to an employee, he shall be reinstated and compensated at his usual rate of pay while he has been out of work. Appeal from discharge must be taken within five (5) days by written notice and a decision reached within ten (10) days from the date of discharge.

Id. Upon notice of drug use by Baker, Strib had the right under the CBA to terminate his employment. In light of the foregoing and this Court's review of the law governing the claims asserted, this court believes that Baker's claims are preempted by the LMRA because they are inextricably intertwined with consideration of the CBA. While Baker's claims are state law claims, the CBA is the defining source of any duties specifically owed by Strib for each claim asserted.

Because these claims are preempted by the LMRA (and have been properly removed to federal court), Section 301's six month statute of limitation applies to the foregoing action. See DelCostello at 169-70. Under Section 301, a party must file suit within six months from the time "the grievance procedure [was] exhausted or otherwise [breaks] down to the employee's disadvantage." Cook 997 F.2d at 1241. In the instant case, Baker grieved his termination through

Local 638 on November 3, 1999. (See Kirsch Aff. Ex. A, July 17, 1999.) In a certified letter dated July 7, 2000, Baker was informed by the Union that Local 638's Executive Board had declined to pursue the grievance to arbitration. (See Kirsch Aff. Ex. B, July 17, 1999.) Baker signed for the certified letter on July 10, 2000. (Id.) Baker filed his complaint on June 15, 2001, approximately eleven (11) months after he was informed of Local 638's decision. In viewing the evidence in the light most favorable to the Plaintiff, this court believes that Baker did not file his complaint within the time frame proscribed by Section 301 and as such this action is time barred and appropriately dismissed. Accordingly, this Court will recommend that Defendant's motion to dismiss be granted.

**B. Defendant's Motion to Dismiss Count IV (Constitutional Claims)**

Next, Strib contends that Baker's Constitutional claims fail because, under Bivens, a private cause of action brought to remedy constitutional violations resulting from a private action that amounts to a federal action is unavailable under a respondeat superior theory. Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971); (See also Def.'s Relpy Mem. at 3.) Baker responds that the general rule disfavoring the doctrine of respondeat superior in Bivens actions is inapplicable in this case and that the implementation of a deficient policy acts itself as a deprivation of Constitutional rights. (Pl.'s Opp'n. Mem. at 6.)

The Supreme Court, in Bivens, held that a private cause of action can be brought to remedy a Constitutional violation that resulted from a federal action or a private action amounting to federal action. See Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971). "The purpose of Bivens is to deter individual federal officers from committing constitutional violations." Correctional Servs. Corp. v. Malesko, Civ. No. 00-860, 122 S.Ct. 515, 2001 WL

1488029, *6 (U.S. Nov. 27, 2001). In Malesko, the plaintiff was unable to maintain a private cause of action against the private entity operating a halfway house as contracted by the federal Bureau of Prisons to provide facilities for prisoners wherein an employee of the defendant had allegedly committed constitutional violations. See Malesko at *6. Specifically, the Court found that using Bivens to infer a Constitutional private right of action against a private entity acting under color of federal law is foreclosed. Id.

Here, the Star Tribune, a private entity, enacted a drug testing program pursuant to DOT and FHWA regulations. (See McKenzie Aff. ¶ 2 & Ex. at § 1.) The federal government requires drug testing for drivers occupying positions of the type held by Baker. See 49 C.F.R. § 40 *et. seq.* (2000). Even accepting, as we must, Baker's assertions that Strib oversaw a negligently administered drug test performed by a third party, a cause of action cannot lie against the Defendant under the reasoning in Malesko. Accordingly, Baker has failed to state a claim upon which relief can be granted and this Court will recommend that Strib's motion to dismiss be granted.

## IV. RECOMMENDATION

Based upon the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Defendant Star Tribune Company's Motions to Dismiss or, in the Alternative for Summary Judgment [#12 & #20] be **GRANTED**.

DATED: MARCH 4, 2002

FRANKLIN L. NOEL
Chief Magistrate Judge

Pursuant to Local Rule 72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, within ten days of service of this Report and Recommendation, written objections which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within ten days after service thereof. All briefs filed under this rule shall be limited to ten pages. A judge shall make a de novo determination of those portions to which objection is made.

Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed within 10 days a complete transcript of the hearing.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Circuit Court of Appeals.