**UNITED STATES DISTRICT COURT**

**DISTRICT OF MINNESOTA**

---

SHAWN GEORGE M. BAKER,

Plaintiff,

v.

OSAMA S. ABO, individually; NATIONAL MEDICAL REVIEW OFFICES, INC.; JOHN DOE, an unknown individual, and ABC COMPANY, an unknown legal entity,

Defendants.

Civil No. 01-1248 (JRT/JSM)

**MEMORANDUM OPINION AND ORDER**

---

Jay D. Olson and Lawrence H. Crosby, CROSBY & ASSOCIATES, 2277 Highway 36 West, Suite 234E, St. Paul, MN 55113, for plaintiff.

Carolin J. Nearing and Robert Mahoney, GERAGHTY, O'LOUGHLIN & KENNEY, Suite 1400, 386 North Wabasha Street, St. Paul, MN 55102, for defendant National Medical Review Offices, Inc.

Plaintiff Shawn Baker worked for the Star Tribune from 1976 until he was terminated on October 1, 1999, as a result of a positive drug test. Plaintiff brought this action against National Medical Review Offices (NMRO) alleging that NMRO failed to use appropriate procedures when collecting his sample, but nonetheless reported the

FILED JUL - 2 2003
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD. ______
DEPUTY CLERK ______

positive result to his former employer, the Star Tribune.[1] Plaintiff asserted claims of negligence, breach of contract, and violation of constitutional rights. Plaintiff is no longer pursuing the breach of contract or constitutional claims, therefore those claims are dismissed with prejudice. For the reasons discussed below, defendant's motion for summary judgment on the remaining claims is granted, and the negligence claims are also dismissed with prejudice.

## BACKGROUND

Plaintiff has a "Class B" driver's license, and drove trucks for the Star Tribune. The Star Tribune has a policy prohibiting illegal drug use, the violation of which is a ground for termination. Plaintiff tested positive for marijuana on two occasions in 1995, and he does not dispute those results. Plaintiff's employment was terminated as a result of those two positive drug tests, but plaintiff was reinstated under a "last chance agreement." The agreement stated that plaintiff's employment would be terminated permanently if he tested positive for drugs again.

On September 21, 1999, plaintiff was randomly chosen for drug testing. At the time, the Star Tribune engaged NMRO to conduct the collection process and test the collected sample. Plaintiff was familiar with the process because he had been tested on at least two prior occasions, and he complains that there were several irregularities in the testing process. Plaintiff noticed the following irregularities: (1) the cup used to collect

[1] Plaintiff also sued the Star Tribune. On March 30, 2002, the Court dismissed all claims against the Star Tribune.

the sample was not packaged in a protective, sealed wrapper when it was given to him; (2) the NMRO employee who handed the cup to plaintiff had his index finger in the cup as he handed it over to plaintiff; (3) and plaintiff's usual testing number was not the number used to identify the specimen.[2]

Because the collection kit was unwrapped, plaintiff requested a different kit. The NMRO employee said that all the kits had been opened, and insinuated that plaintiff was refusing to test. Plaintiff responded that he was not refusing to test, and provided a urine sample using the previously opened kit.[3]

Plaintiff claims that he has not smoked or used marijuana since 1995. However, three days after the test, on September 24, 1999, plaintiff was informed that the sample had tested positive for marijuana. NMRO asked plaintiff if he wanted them to test the split sample, and plaintiff declined.[4] Plaintiff instead requested permission to provide a

---

[2] Although plaintiff asserts that the testing number was not his usual number, he does not in this motion assert that the sample that tested positive was not his, or that somehow a switch occurred after he provided the sample. The record indicates that plaintiff placed his initials over the tamper evident seal, and signed the Custody and Control Form. In addition, the number on the form correctly set forth plaintiff's employee number. Plaintiff's amended complaint sets forth a claim that the sample was not his, however, this theory of liability is not discussed in the instant motion. Further, based on the evidence plaintiff has produced, no reasonable fact-finder could find that the sample which tested positive did not belong to plaintiff.

[3] Plaintiff was aware that a refusal to test is equivalent to a failed test.

[4] Pursuant to federal regulations, NMRO collects a specimen bottle and a split specimen bottle. The sample from the specimen bottle is tested first. If the result is positive, a confirmation test is run; if that second test confirms the positive result, the employee may request that the remaining "split specimen" be tested as well.

new sample, but the Star Tribune and NMRO denied his request. He also called his personal physician to request a test, but his physician was unavailable.

Plaintiff was terminated on October 1, 1999. That same day, plaintiff went to an independent testing facility where he submitted a urine specimen for testing.[5] The result was negative. Plaintiff was unemployed for about a year following his termination from the Star Tribune. He alleges that he lost his pension and has been unable to find comparable employment.

Plaintiff filed a grievance with his union, which the union did not pursue. Plaintiff then filed this action against the Star Tribune and amended the complaint to include claims against NMRO. The Star Tribune moved for judgment as a matter of law or summary judgment, which was granted.[6]

## ANALYSIS

### I. Standard of Review

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a

[5] As noted, plaintiff had attempted to submit a new sample prior to October 1, but there was some confusion about who could order the re-test, and who would have to pay for it.

[6] Plaintiff's negligence and breach of contract claims against the Tribune were barred by a collective bargaining agreement because they were not brought within six months. Plaintiff's constitutional claims were foreclosed for lack of a private right of action.

judgment as a matter of law." Fed. R. Civ. P. 56. Only disputes over facts that might affect the outcome of the suit under the governing substantive law will properly preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is not appropriate if the dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* Summary judgment is to be granted only where the evidence is such that no reasonable jury could return a verdict for the nonmoving party. *Id.*

The moving party bears the burden of bringing forward sufficient evidence to establish that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The nonmoving party is entitled to the benefit of all reasonable inferences to be drawn from the underlying facts in the record. *Vette Co. v. Aetna Casualty & Surety Co.*, 612 F.2d 1076, 1077 (8th Cir. 1980). However, the nonmoving party may not merely rest upon allegations or denials in its pleadings, but it must set forth specific facts by affidavits or otherwise showing that there is a genuine issue for trial. *Forrest v. Kraft Foods, Inc.*, 285 F.3d 688, 691 (8th Cir. 2002).

## II. Negligence

Plaintiff must establish evidence of duty, breach, causation, and injury to maintain his negligence claim. *Louis v. Louis*, 636 N.W.2d 314, 318 (Minn. 2001) ("A defendant in a negligence action is entitled to summary judgment when the record reflects a complete lack of proof on any of the four elements necessary for recovery: (1) the

existence of a duty of care, (2) a breach of that duty, (3) an injury, and (4) the breach of that duty being the proximate cause of the injury."). For the purposes of this motion, defendant does not dispute that it owed a duty to plaintiff, that the duty was breached, or that plaintiff suffered an injury.[7] The primary issue the Court resolves, therefore, is causation.

Although the parties focus on causation, each frames the issue differently. Defendant contends that to survive summary judgment, plaintiff must offer evidence that would allow a reasonable fact-finder to determine that the claimed testing irregularities caused the positive result. Expert evidence is required, defendant argues, because the potential causes of false positive drug tests are beyond the expertise of the ordinary juror. Plaintiff formulates the issue somewhat differently, and argues that because the test was conducted in violation of federally-mandated testing procedures, the test should have been voided and his employer never informed of the test result. Plaintiff essentially makes a causation per se or strict liability argument -- asserting that where testing procedures are not followed, testing companies are liable for all subsequent injuries, regardless of the effect of the irregularity on the test result.

---

[7] Whether defendant testing companies owe a duty to employees is not a settled question under Minnesota law, and the Court notes contrary authority in other jurisdictions. *Compare Ragsdale v. Mount Sinai Med. Ctr.*, 770 So.2d 167 (Fla. Ct. App. 2000); *Elliot v. Laboratory Specialists, Inc.*, 588 So. 2d 175 (La. Ct. App. 1992) (drug testing company owed duty of care to employee) *Herbert v. Placid Refining Co.*, 564 So. 2d 175 (La. Ct. App. 1991) (drug testing company owes no duty of care to employee, only to employer). The trend, and in the Court's view, the better result, is to recognize a duty. *See Cooper v. Laboratory Corp. of America Holdings*, 150 F.3d 376, 379 (4th Cir. 1998) (recognizing trend). *See also Mission Petroleum Carriers, Inc. v. Solomon*, ___ S.W.3d ___ (Texas 2003) (**employers** who conduct drug testing pursuant to Department of Transportation regulations owe no duty of care to employees).

Consistent with this argument, plaintiff contends that expert testimony is not required in this case, and points to cases from other jurisdictions to support that argument. In particular, he urges the Court to examine *Hodel v. Director of Revenue*, 61 S.W.3d 274 (Mo. Ct. App. 2001).[8]

In *Hodel*, a school bus driver was terminated after testing positive for marijuana. He challenged the result, arguing that the testing procedure "wasn't what [he] was used to." The claimed irregularities included a failure to properly seal the collection bottle and initials on the bottle that were not plaintiff's. Plaintiff apparently did not offer any expert testimony regarding the possible cause of the false positive. The reviewing court determined that the concerns about contamination or the possibility that the sample was not plaintiff's provided adequate evidence for the trial court to discount the test result.

*Hodel*, however, does not support plaintiff's argument that the reporting itself, rather than the false result, amounts to actionable negligence. Instead, the *Hodel* court specifically contemplated the causation element, and did not rest on a strict liability theory. If plaintiff's theory were correct, the court in *Hodel* would have needed to go no further than recognizing the irregularity and the adverse employment action. Indeed, were plaintiff's theory viable, there would be no need for any further action in this case because under plaintiff's rationale, **every** positive drug test where there was **any**

---

[8] Plaintiff also relied on *Mission Petroleum Carriers, Inc. v. Solomon*, 37 S.W.3d 482 (Tex. Ct. App. 2000). After oral arguments were heard in this case, however, the *Mission Petroleum* case was reversed by the Texas Supreme Court, see *Mission Petroleum Carriers, Inc. v. Solomon*, ___ S.W.3d ___ (Texas 2003). The *Mission Petroleum* case does not support plaintiff's argument.

irregularity in the testing procedure—however minor—would result in liability for the testing company. Plaintiff's theory has not been accepted by courts in Minnesota, and the Court has not found support for such a theory in other jurisdictions. *See, e.g., Christensen v. Northern States Power Co.*, 25 N.W.2d 659, 661 (Minn. 1946) (rejecting *post hoc ergo propter hoc* theory in dispute regarding what killed fish in plaintiff's lake); *Donovan v. Bioject, Inc.*, No. C8-00-1112, 2001 WL 243096 (March 13, 2001 Minn. Ct. App.) (plaintiff must prove causation in strict liability action just as in negligence action).

Because the Court rejects plaintiff's "strict liability" or "causation *per se*" theory, the Court next determines whether the evidence plaintiff has presented, including testimony from a medical doctor, could support a finding that the defendant's actions caused the false positive. While the Court is mindful that issues of causation often involve questions of fact and "seldom can be disposed of on a motion for summary judgment," *Moe v. Springfield Milling Corp.*, 394 N.W.2d 582, 585 (Minn. Ct. App. 1986) (quotation omitted), summary judgment may be appropriate where the nonmoving party has failed to point to any evidence that would allow the jury to reasonably find for the nonmoving party. *DLH, Inc. v. Russ*, 566 N.W.2d 60, 71 (Minn. 1997) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)); *DeCourcy v. Trustees of Westminster Presbyterian Church, Inc.*, 134 N.W.2d 326, 328 (1965).

Causation must be established beyond the point of speculation, *DeCourcy*, 134 N.W.2d at 328, but expert testimony is not always required. *See Stahlberg v. Moe*, 166 N.W.2d 340, 345 (Minn. 1969); *see also Smith v. Runk*, 425 N.W.2d 299, 301 (Minn. Ct. App. 1988). Instead, expert testimony is necessary only where the "question involves

obscure and abstruse medical factors such that the ordinary layman cannot reasonably possess well-founded knowledge of the matter and could only indulge in speculation in making a finding." *Gross v. Victoria Station Farms, Inc.*, 578 N.W.2d 757, 762 (Minn. 1998) (quoting *Bernloehr v. Central Livestock Order Buying Co.*, 208 N.W.2d 753, 755 (Minn. 1973)). For example, expert testimony was not required in a medical malpractice case that relied on a "slip and fall" theory. *See Tousignant v. St. Louis Co., Minn.*, 615 N.W.2d 53, 59-60 (Minn. 2000) (holding that no expert testimony was required where elderly plaintiff claimed that nursing home failed to restrain her and she fell and broke her hip as a result). In contrast, expert testimony is required where the causation issues involve questions beyond the ken of ordinary lay witnesses. For example, expert testimony was required where the question was what caused the onset of lameness in a show horse, because ordinary lay people are not versed in horse lameness or horse anatomy. *Gross*, 578 N.W.2d at 762. Similarly, where plaintiffs claimed that they were injured by exposure to nitrogen dioxide gas from the engine exhaust of an ice resurfacing machine, expert testimony was required. *Anderson v. City of Coon Rapids*, 491 N.W.2d 917, 920 (Minn. Ct. App. 1992).

For the purposes of this motion, the Court accepts as true plaintiff's contention that he did not smoke or use marijuana prior to the September 21 test. However, plaintiff must point to some testimony or evidence that would allow a reasonable fact-finder to determine that defendant's negligence caused the false positive result. Plaintiff has submitted the expert affidavit of Dr. Michael Rath, who opined that "a collector cannot, under any circumstances, place the collector's hand or finger into the collection container

since this may skew the test." Dr. Rath did not opine that such a breach could have caused the positive result in this test. Plaintiff testified at a deposition that he saw nothing in the transparent collection cup, and saw nothing on the collector's finger. Plaintiff also does not assert that the sample was somehow switched, instead he admits that the collector accurately wrote plaintiff's identification number on the "Custody and Control" form. In sum, plaintiff simply has failed to allege facts that would allow a reasonable fact-finder to determine that defendant's negligence caused the false positive.

## III. Defendant Abo

Plaintiff has also brought claims against Osama S. Abo, individually. It does not appear from the record that defendant Abo has been served in this matter. Pursuant to Federal Rule of Civil Procedure 4(m), the Court will dismiss the defendant Abo if plaintiff does not show proof of service, or good cause for the failure to serve. Plaintiff has ten (10) days from the date of this Order to effectuate service or inform the Court of good cause for the delay.

## ORDER

Based upon the foregoing, the submissions of the parties, the arguments of counsel and the entire file and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant National Medical Review Office's motion for summary judgment [Docket No. 45] is **GRANTED.** Plaintiff's claims against National Medical Review Offices, Inc. are **DISMISSED WITH PREJUDICE**.

2. Plaintiff has ten (10) days from the date of this Order to effectuate service on defendant Abo or inform the Court of good cause for the delay. Upon expiration of the ten days, the Clerk of Court is directed to enter judgment in favor of defendant and against plaintiff if plaintiff has failed to comply with the terms of this Order.

DATED: July 2, 2003
at Minneapolis, Minnesota.

John R. Tunheim

JOHN R. TUNHEIM
United States District Judge